Good morning, Your Honors. Samford Dumaine for the appellant. Good morning, Your Honor. Paul Greenwald on behalf of the Appellate of the Chicago Board Options Exchange. Good morning, Your Honors. William Nissen on behalf of the Options Theory Corporation. Have you fellas figured out who's going to argue what? Your Honor, for the defendants, we're going to split our argument. I'll handle the regulatory immunity point while Mr. Nissen will handle the state law and pleading issues. Okay. Let's proceed. Good morning, Your Honors. If I may, I'd like to reserve three minutes for a vote. Your Honors, this case, in its facts, boils down to a very simple setback. No one disputes that the strike price of an option is an essential component of the price of the option. And it is also unquestionably and indisputably true that if one party to an options transaction knows that the strike price will be adjusted while the other one does not, the first party has an enormous and unfair advantage in trading those securities. What happened here, Your Honors, is that Platinum Partners and the other plaintiffs entered into options contracts with counterparties who were told by the defendants that the strike price of the India Fund, which was the underlying security at issue, would be adjusted to account for a distribution in the India Fund. Seen in these basic terms, I don't think it could be seriously argued that what happened here was consistent with a fair, open, and efficient securities market. Yet the defendants want the court to rule and affirm the court below that they are immune from liability. How about the immunity issue here? Yes. The immunity issue, if I may, Your Honor, is one that courts have repeatedly said is very fact-specific. The defendants rely repeatedly on Second Circuit case law. And one of the leading cases that the defendants like to cite in this regard says specifically that given the protection that immunity affords, we have cautioned that the doctrine is of a rare and exceptional character. As such, courts must examine the invocation of absolute immunity on a case-by-case basis, and the party asserting immunity bears the burden of demonstrating its entitlement to it. So we have a clear mandate from the courts that immunity questions are to be handled on a case-by-case basis. And if one looks at the case law that's been cited in the briefs, one will see that the facts of the situation here where the defendants are engaging in conduct that is not with respect to their regulatory hat, but with respect to their hat as profit-making organizations that have an interest in making profit and conduct consistent with that profit-making interest, that is not part of the regulatory function that's entitled to immunity. In the Weissman case, for example, from the Eleventh Circuit, the court said that when an SRO is not performing a purely regulatory, adjudicatory, or prosecutorial function, but rather acting in its own interest as a private entity, absolute immunity from suit ceases to obtain. The court goes on to say, every case that has found an SRO absolutely immune from suit has done so for activities involving the SRO's performance of regulatory, adjudicatory, or prosecutorial duties in the state of the SEC. In this case, how do you carve out an immunity exception here? Let's look at the example of what happened in the Eleventh Circuit in Weissman and why Weissman should be the persuasive authority that this Court follows. In Weissman, NASDAQ was the defendant. NASDAQ is in the same shoes as these self-regulatory organizations are in this case in terms of the regulatory function and quasi-immune status. In that case, the conducted issue had to do with promoting WorldCom stock. And the Court said that they're not entitled to that immunity because in order that the promotion of the WorldCom stock was not done as part of any regulatory function, but rather in order to generate trading volume and income for the defendants and that they directly and indirectly profited from the sale of WorldCom shares. It's the same situation here. The conducted issue here is not the decision to adjust the strike price. It is not the timing of the public announcement, but rather the conduct is the private dissemination of material inside information in two forms. One, through a private website to its members, of which plaintiffs were not, and also through oral conversations. That information was disseminated early in the morning, the day when the trading occurred, after the markets closed, both defendants announced publicly for the first time that there would be an adjustment for the strike price. The only reason that private dissemination of information is taking place is to benefit the members, who pay dues after all to become members, and to increase their trading volume. Because without that, if the information had been disseminated publicly, the trading volume that we had here, and particularly the trading volume from these plaintiffs, would never have existed. Trading volume leads to income and profits for these defendants. So the immunity defense only comes into play when one can clearly, and the burden is on them, one can clearly demonstrate that the conducted issue is part of the self-regulatory function delegated down by the SEC and the United States government. When, as was shown in Weissman, and was shown in another case where NASDAQ was a defendant, the opulate fund versus NASDAQ, when NASDAQ was issuing securities and making, created a derivative market based on the stock listed on an exchange, and the court said in that situation, in choosing to create the index and disseminate the price information, NASDAQ represents no one but itself. It's the same situation here. For the same reason why that court in the NASDAQ case held that there was not an entitlement to immunity, there should be no entitlement to immunity here. Another case that's on point is the case of Judge Dara in the Northern District of Illinois against the CBOE, where Judge Dara held that on the motion to dismiss, there was not enough facts in the record to say that they had met their burden as a matter of law to be entitled to immunity because they do not enjoy complete immunity. It is only when they're acting under the aegis of the Exchange Act's delegated authority that they so qualify. Even one of the defendant's favorite cases in this regard, where there was a situation where immunity was found, is very important to understand. In the DL Capital case, the Second Circuit was dealing with a situation where the question was whether there was immunity for a public announcement of a certain set of facts in that situation. And the court, in finding that there was immunity for the public announcement, said without the capacity to make announcements, the defendant would be stripped of a critical and necessary part of their regulatory powers, namely the power to inform the public of those actions it has undertaken in the interest of maintaining a fair and orderly market or protecting investors and the public interest. That's what's entitled to immunity, protecting the public, having an orderly market. When you have a situation where the defendants have a private business, and we're wearing two hats, one hat, the public protection regulatory hat, and the other hat, a hat that gives material inside information to its members at the expense of others in the investing public, that is not entitled to immunity for the reasons in the cases I've cited. If I may, Your Honor, I'd like to turn to the substantive points also. Justice Lampkin has a prior commitment and she'll have to leave, but she will listen to the tapes. Thank you, Your Honor. With respect to the substantive claims, the court below did not rule on whether or not we had properly pledged substantive claims under Illinois law because she had dismissed purely on immunity grounds and not reached the other questions. The defendants argue on alternative grounds that even if the court finds that they are not entitled to immunity, there should be an affirmance here because we cannot state a claim as a matter of law under the substantive law. And their argument focuses almost exclusively on what they say is a lack of a duty by these defendants to these plaintiffs. In other words, they're saying it's perfectly all right, even if they're not immune, it's perfectly all right for them to tip inside information to their members because they have no duty to the public in general and to these plaintiffs specifically. The problem with that argument, Your Honor, is that they totally ignore the fact that they have a relationship with everybody who trades on these exchanges, including these plaintiffs. The OCC, Your Honor, is actually the one who issues the options in question. When one buys or sells an option on this exchange, the form of the trade is that the transaction takes place with the OCC. When the OCC is engaging in a securities transaction, they do have a duty with the people they're engaging transactions with. They do have a duty to these plaintiffs not to disseminate material inside information to some players in the market and not others. With respect to the CBOE, the CBOE makes a market for these securities. They disseminate price information electronically to everyone in these markets, including these plaintiffs. So the duty- Well, do you have a case that shows us what their duty is? Well, if one looks at going back to the affiliated Ute case, the United States Supreme Court case, dealing with the federal securities laws, and the Illinois courts have said- All right, so I guess the answer to my question is no? No, Your Honor. The answer to your question is the affiliated Ute case supports my argument. And the affiliated Ute case, United States Supreme Court case, where the Illinois courts have said that in construing the Illinois securities laws that the Illinois courts will look to the federal courts for guidance in the interpretation of the federal securities laws. And the affiliated Ute case is the leading case dealing with omissions as opposed to affirmative statements. And that's what we have here, Your Honor. These defendants omitted to inform the public that there was going to be an adjustment of the strike price and thereby giving some players in the markets an unfair advantage. And the affiliated Ute case said the duty of disclosure arose out of the fact that the defendant was active in encouraging a market for a certain stock and profited off the development of that market, thereby leading the defendant in that case to have a duty to disclose. So there is authority for the concept that there's a duty to disclose. And there is plenty of authority. The Texas Gulf Sulphur case from the Second Circuit, one of the early leading cases in this area, that says when you're engaged in trading the securities market, you have a duty to abstain or disclose. So when these defendants are involved in making the market and being parties to the transaction and they're going to disseminate, they're in possession of material inside information and they're going to disseminate that information to insiders, they have a choice. They can not disseminate it to the insiders or they can suspend trading in those options. It's not unheard of at all for securities, self-regulatory organizations and securities markets to suspend trading when the SROs know that there's material inside information out there so that the markets are not going to be fair and open and efficient. And in this situation, Your Honor, when the defendants come before this Court and say they should be entitled to immunity and that there should not be a cause of action for tipping material inside information, they're basically asking this Court to endorse a system that they have in place that allows them to create an uneven playing field in these important securities markets in this city, in this state, and in this country. And I don't think that's something that this Court would want to endorse under any situation, but certainly not. But isn't that something that you should present to the legislature? No, Your Honor. The state law in the state of Illinois adequately covers tipping and trading of material inside information. No new statute would be needed to deal with this situation at all, Your Honor. Okay. All right. I'll save some time for your vote. Thank you. Good morning. The background of this case is very important to recognize, and the federal regulatory scheme is critical for this Court to understand why both CBOE and OCC are entitled to immunity in this case. Both CBOE and OCC are required under federal law to regulate the options markets, and when performing those tasks, they stand in the shoes of the SEC and act in a quasi-governmental role. In this case, the Options Clearing Corporation Securities Committee made a decision to adjust these particular options strike price, and then they announced that decision. And both of those acts are regulatory in nature and are entitled to absolute immunity. In fact, if you look at the case, what Platten really argued about initially, if you follow the chronology of the case, they were unhappy with the adjustment decision itself, and then they later conceded that that decision was subject to immunity when they were confronted with the immunity argument at the PRO stage. Then they shifted gears a little bit, and they alleged that somebody at either OCC or CBOE made an improper announcement, and under the federal regulatory scheme, the SEC is charged with making sure that CBOE and OCC properly carry out their regulatory responsibilities, not private litigants. In fact, cases have recognized that private litigants don't have a cause of action against exchanges for violating their rules or for instances when they claim that the SRO didn't properly fulfill its regulatory responsibilities. There is a remedy here. The remedy is the SEC comes after the CBOE and the OCC if, in fact, there was a regulatory failure. Was that an immunity question or is it a jurisdictional question? It's an immunity question. It's the federal regulatory scheme is why the Doctrine of Regulatory Immunity has developed, because under federal law, private litigants, the scheme that Congress has enacted, doesn't provide for private litigants to question the manner in which SROs discharge their regulatory functions. So if you allow, for example, Platinum to come in and say, we don't like the method of the announcement, we think there should have been a public announcement, and if you start down that path, you're quickly down a slippery slope, where first it's going to be we don't like the public nature of that announcement. Well, there are other ways you could have announced it that we think are better. And if you allow courts and private litigants to define the regulatory duties of SROs, they'll have a patchwork of regulation. And the Doctrine of Regulatory Immunity was developed to make sure that that didn't happen, that you wouldn't have 50 different standards that SROs had to comply with, and that instead the SEC could exercise its expertise in the area, it could consider competing factors, and it could decide whether the SRO had properly discharged its regulatory duties. And the SROs are liable if they don't properly discharge their regulatory duties. Does the SEC really do that? They do it all the time. There are a number of investigations where SROs, in fact, in the NYSE specialist case, which we cited, that case arose because the plaintiffs had a leaked report from the SEC, and they were looking at the NYSE to see if they were actually properly fulfilling their regulatory duties. But what the courts have held repeatedly is that private litigants can't challenge the method by which SROs discharge their regulatory functions. Well, who decides that? Who decides that? That's why I asked the jurisdiction question. Who decides whether or not particular conduct is conduct that is part of a regulatory function or it's not? So, for example, in the case that was cited earlier, where a court decided that conduct that was taken for the organization's own benefit was not a regulatory function, and therefore there's no immunity. And so the question is, well, who makes that decision? Well, the court has to make that decision. The court has to make that decision in the first place. But the court has to decide whether there's immunity. Right. And the test is an objective. So my question is, they argued that, you know, if you make an announcement that you're going to change the strike price and you make that announcement to just members who have paid a price to be members, and also orally to certain individuals, how is that a regulatory function? Well, again, you have to look at the objective nature of the act. And you shouldn't inquire beyond that as to the method or motives behind the act. Courts are rock solid on that. They're consistent. All the courts of appeals have held that you have to objectively consider the objective nature of the act. And here the act is an announcement of a regulatory decision. Platinum, you know, alleges that the decision was improperly announced. That is an issue for the SEC. And with respect to the Weissman case, the Weissman case is a very different case from our case. As an aside, Weissman actually recognized the doctrine of regulatory immunity, and where there was regulatory conduct in that case, it applied the doctrine of regulatory immunity. In Weissman, the plaintiff also complained about the NYSE's act of disseminating WorldCom's financial statements. And the court said that's regulatory activity. The area where the court upheld the claim had nothing to do with regulatory activity. It wasn't tied to a regulatory act. Here the announcement is directly tied to the regulatory act. The regulatory act was the decision to make the strike price adjustment. And courts have repeatedly held that the announcement of a regulatory decision, when considered objectively, also is a regulatory act. And one case that's directly on point is the NYSE specialist case. In that case, the plaintiffs allege that the NYSE was making an improper announcement of a regulatory act. The case alleged that the NYSE was tipping off its specialists on the floor that they were being investigated so they could conform their conduct. And the court said that that type of conduct falls within immunity. So courts have addressed this specific fact pattern, this idea of a private or premature announcement, and they've held that those types of acts do fall within the doctrine of regulatory immunity. The Kundrat case, which Mr. DuMain mentioned as well, is also a very different case. It was a case that I was involved in. There was an extremely complicated fact pattern alleged in the complaint. And in that case, Judge Dara held that he would wait and see and let the facts develop further to determine whether immunity was applicable. He didn't reject the doctrine. He just wanted to wait. This case is very different. The facts that give rise to immunity come from Plattman's complaint. They complained about the regulatory decision. They sought to enjoin it. When they realized they were up against the regulatory immunity wall at that point, they shifted gears and complained about the method and the timing of that announcement. And the courts have held that those types of inquiries are for the SEC only under the Federal Securities and Exchange Act. And I would submit if Kundrat was decided today, it might be decided differently. The case is 10 years old, no court. Subsequently, and there have been a lot of subsequent cases dealing with the doctrine of regulatory immunity, no case since that time has adopted the wait-and-see approach. In fact, as the Supreme Court held in the Saucier case that we cited to the court, SROs are entitled to a finding of regulatory immunity on the front end. The whole purpose of the doctrine is so that SROs have the freedom to take regulatory acts, again, subject to SEC oversight, without the fear that they're going to be hailed into court by private litigants and forced to justify or explain those acts. The other case that Mr. Dumaine cited, the Opulent case, again, dealt with purely commercial conduct. And neither CBOE or OCC stands here today and says, for example, we have immunity for all of our acts. There has to be a tie to a regulatory duty, and there is in this case. The duty to make the strike price adjustments and to consider whether the strike price adjustments should be made, and then the duty to announce or at least the regulatory power to announce those acts. Unless your honors have any further questions. No, and I just have one little question about theory. So when the SEC does nothing, then the private litigators, they have no recourse? Well, the cases have recognized that very fact. Sparta Surgical has recognized that Congress has decided that private litigants do not have any cause of action in this area. But in this case, the plaintiffs do have a right. I wonder how Congress did that. Well, in this case, your honor, it's important to recognize that the plaintiffs do have a remedy that they have chosen not to pursue. As you might remember from the record, they attempted to amend their complaint to add the market makers they traded with, who may or may not have immunity, and who may or may not have other defenses, but they've dismissed those claims voluntarily, and they haven't pursued those claims against the people who allegedly received this inside information and traded on it. So it's not as though they're completely shut out of court. Under the federal regulatory scheme, Congress has decided that the SEC only has the power to second-guess SRO's regulatory decisions. Thank you. May it please the court. Your honors, regardless of whether or not regulatory immunity exists in this case, there is no cause of action stated under Illinois law. All of the claims that are stated by the plaintiff are fraud claims. There's Illinois Securities Act fraud, there's common law fraud, there's Consumer Fraud Act fraud. All of these fraud claims require either an affirmative misrepresentation or an actionable omission. And plaintiff has failed to allege either of these. There's certainly no affirmative misrepresentation alleged. They don't contend that CBOE or OCC made any misrepresentation to them. Rather, their entire claim is based on an alleged omission. They argue that CBOE and OCC failed to tell the investing public about the adjustment decision at the same time that it told some people about it. This is not an actionable omission because CBOE and OCC did not have a duty to speak under Illinois law under these circumstances. So is that right? You tell some but not others? Is that what we're supposed to be saying here? No, your honor. I mean, there's a lot of gradations of that and what can happen, as Mr. Greenwald said. Someone could say you shouldn't put it on this website because I don't look at that website. You should have gotten it to the news because I don't look at that news. You should have waited until Europe was up so they would know about it. You shouldn't have done it. There are all kinds of variations on how the word gets out. But what's important is under Illinois law, there's no duty to speak. Now, if there was an act of Congress, perhaps, that could raise the issue. If there was an SEC rule that told the SROs how to do it, certainly there could be a duty. But we're talking Illinois law. All these claims are under Illinois law, and under Illinois law there is no duty to speak in this circumstance. There are really two times when a duty to speak arises under Illinois. There's a fiduciary duty. It clearly wasn't involved here. There's no fiduciary relationship between the parties. Well, when there's no duty to speak, does that also mean that you could tell some of the people but not all of the people? Is that what it is? Well, I say yes, Your Honor. You could because you don't have a duty to speak to these other people. I see. So you could just tell your group of insiders and then the poor little investor, what does he do? Well, that's where you get into the regulatory immunity. The SEC can take care of it, Your Honor. As Mr. Greenwald said, you've got people who are actually trading here. We're talking about the people who are the regulators of the market. They're suing them. If they sued the people who were trading, that's a different story. And they're dealing with those people. They're not dealing with the people who are regulating the market. And I would say the DeBose case by the Illinois Supreme Court is very important here and very instructive because it's a Consumer Fraud Act case, which is one of the claims we have here. It is a claim for fraud in which is what all these claims are under Illinois law. And the claim there was someone who bought a drug sued a drug company saying, you had a duty to disclose to the public the side effects of this drug. And that person that made the claim had not received any communication from that drug company saying one thing or another. But they said, no, you had a duty to disclose this was to the entire public. Well, the Illinois Supreme Court said there's no cause of action under those circumstances. There's no duty to speak because otherwise you would have a duty to speak to the whole world. You don't think about just platinum out here. There would be all kinds of people out here that this duty would supposedly run to if it ran to the entire public. And there is no case law that says it runs there. The DeBose case says the opposite. It says you have to make a statement. If you make a statement, then you're under a duty either to make that statement true or make it complete. And that's where the duty to disclose arises. If OCC or CBOE had said something affirmative that misled them, you know, laying aside regulatory immunity, that would be an issue under Illinois law. But that isn't what happened here. They're saying you had this duty that effectively comes out of the air to tell us and to tell everybody else whenever you told someone else. And that simply does not exist under Illinois law. And I think the DeBose case is directly on point for that point. There's really no principle difference between saying a drug company has to tell the world about the side effects of the drug or that OCC and CBOE have to tell the world about the strike price adjustment at the same time. So for those reasons, Your Honors, we would, and simply the DeBose is consistent with the long-running Illinois law that says you have to have a fiduciary duty or you have to have an incomplete or misleading statement in order to have a duty to disclose. So it's right in line with all the case law. So for those reasons, we would ask that you affirm the judgment, Your Honor. Your Honors, on the immunity question, the defendant's argument is circular. They say that the SEC is the only one who has the power to second-guess regulatory decisions. But I think you covered immunity pretty good. Okay. Maybe some of the other things you might want to spend your time on. May I just take 30 seconds on the immunity, Your Honor? Okay. The point I was going to make is that their argument is circular. They say it's only the SEC who can deal with regulatory decisions. And that begs the question, is this a regulatory decision or not? And for all the reasons I said before, it's simply not. We're not questioning the adjustment decision or the public announcement. And they are turning the issue into something that is not here. With respect to the substantive issue, Your Honor, I just. If you're not questioning the public announcement, what are you questioning? I'm questioning. You're questioning the manner of the announcement. I'm not questioning the manner or the public announcement. I'm questioning the fact that information about the strike price was given to their members and given privately. I don't consider that to be the announcement. The announcement came after the markets closed and it was too late to do anything about it. You're calling it inside information. Absolutely, Your Honor. And that's the huge difference between this and the specialist case. The inside information is not only inside information. It's inside information from which they profit. It makes the memberships more valuable and it increases trading volume. And the specialist case is different because you're talking about tipping people that they're under investigation. There's no monetary benefit to be made by the New York Stock Exchange in doing that. That is part of the regulatory function in terms of discipline and that sort of thing. With respect to the substantive claim, Your Honor, I would just make the point that, as I said before, in a long line of Second Circuit cases, there certainly is authority that there is a duty to speak when you're taking action that's going to affect and promote trading in the securities markets. With respect to the last point that counsel made about the Consumer Fraud Act, the point I would make there is the courts, and we cited the Northern District of Illinois case for this proposition, Preston v. Cruiser. The courts have found that the Consumer Fraud Act is to be interpreted liberally and is meant to eradicate all forms of deceptive and unfair business practices. And this certainly, in this instance, is an unfair business practice, Your Honor. The Consumer Fraud Act isn't simply just limited, such as our column of fraud, it's just misrepresentations and omissions. It speaks to deceitful conduct. That is my point, Your Honor, yes. I mean, you're basically telling us that they wore two hats, that they were a self-regulatory organization, but that they wore two different hats. Is that what you're telling me? They clearly did, and that's exactly the same as the situations in the cases that we cited in support of our argument, the Weissman case in the Eleventh Circuit, where NASDAQ was found not to be entitled to immunity for promoting the purchase of WorldCom stock, and the other NASDAQ situation where the NASDAQ market was actually making a market in derivatives for its own financial benefit. These SROs frequently wear two hats, and when they're wearing the hat where the conduct in question is directly supportive of their bottom line and their private interest that has nothing to do with regulating the markets, then they're not entitled to immunity, Your Honor. Thank you very much. Thank you very much, Ruben. It's a very interesting case. Briefs were very good, and we'll take that case under advisement. We'll be adjourned.